1

2

3

4

5

6

7

8        # UNITED STATES DISTRICT COURT

9        # SOUTHERN DISTRICT OF CALIFORNIA

10

11       PAUL C. HAMILTON,                             Civil No.    05-1546 DMS (BLM)
         CDC #K-01232,
12
                                    Plaintiff,
13                                                      **ORDER GRANTING DEFENDANTS'
                                                        MOTION TO DISMISS PLAINTIFF'S
14             vs.                                      SECOND AMENDED COMPLAINT
                                                        PURSUANT TO FED.R.CIV.P. 12(b)(6)**
15       F. HOLMES; J. NAPOLITANO;
         M. BROWN; A. FAVILA;                           **[Doc. No. 17]**
16       T. LOFTIN,

17                                  Defendants.

18            Plaintiff, an inmate currently incarcerated at Centinela State Prison ("CEN") in Imperial,

19    California, and proceeding pro se, has filed a Second Amended Complaint ("SAC") pursuant to 42

20    U.S.C. § 1983 [Doc. No. 16]. Plaintiff claims CEN Sgt. F. Holmes subjected him to unlawful retaliation

21    and cruel and unusual punishment by transferring him from one yard to another on July 6, 2004. (*See*

22    SAC at 2-3, 5.) Plaintiff further claims Inmate Appeals Examiner Tony Loftin denied him due process

23    on January 19, 2005, when he found Plaintiff's grievances regarding the transfer unsubstantiated. (*Id.*

24    at 2, 4, 5.) Holmes and Loftin have filed a Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6) [Doc.

25    No. 17].

26            For the reasons discussed below, Defendant Holmes and Loftin's Motion is GRANTED.

27    / / /

28    / / /

# I.

## PROCEDURAL HISTORY

Plaintiff initiated this case by filing a "Civil Action for Protection of Rights, Damages and Injunctive Relief" pursuant to CAL. CIVIL CODE § 52.1(a), (b) and (c) in Imperial County Superior Court on June 13, 2005. After the named defendants were served, they filed a Notice of Removal invoking this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1441(b) on August 3, 2005 [Doc. No. 1]. Plaintiff objected to the removal, arguing that his case involved no federal questions, but on February 23, 2006, this Court overruled those objections, denied Plaintiff's request to remand, sua sponte dismissed his Complaint pursuant to 28 U.S.C. § 1915A(b)(1), and denied his "urgent" request enjoining his transfer from CEN to either San Quentin, Folsom or Soledad State Prisons. (*See* Feb. 23, 2006 Order [Doc. No. 10] at 11.) The Court further granted Plaintiff leave to file an Amended Complaint, which addressed the deficiencies of pleading identified in its Order within 45 days. (*Id.*)

On March 10, 2006, Plaintiff filed a document entitled "First Amended Complaint" ("FAC") [Doc. No. 11]. However, on May 30, 2006, the Court found Plaintiff's FAC failed to address any previously identified pleading deficiencies, and was instead merely a request for reconsideration of the Court's February 23, 2006 Order. Therefore, the Court denied Plaintiff's request for reconsideration and dismissed his FAC pursuant to FED.R.CIV.P. 8, but granted Plaintiff an additional opportunity to amend. (*See* May 30, 2006 Order [Doc. No. 15] at 7.) On June 28, 2006, Plaintiff filed a Second Amended Complaint ("SAC"), now alleging Eighth, Fifth and Fourteenth Amendment violations by Sgt. Holmes and Appeals Examiner Loftin ("Defendants") only [Doc. No. 16].[1] On July 6, 2006, Defendants filed a Motion to Dismiss Plaintiff's SAC for failing to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) [Doc. No. 17]. In opposition, Plaintiff has filed a "Motion to Deny Defendants' Motion to Dismiss," (hereafter "Opposition") [Doc. No. 19], to which Defendants have filed a Reply [Doc. No. 22].

///

///

---

[1] Because Plaintiff's SAC supersedes his prior pleadings, and it fails to identify any other previously named Defendant (Napolitano, Brown, Favila or Calderon) and does not re-allege any constitutional violations on the part of those persons, he has waived all claims against them. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

1

## II.

2

### DISCUSSION

3

#### A.      Factual Background

4        In his original Complaint, Plaintiff alleged three separate causes of action, all "involving a First

5    Amendment right to the United States Constitution, the right of an inmate 'trained in law,' to

6    communicate with inmates he was in the process of assisting with [] legal claims in state and federal

7    courts."  (*See* Compl. at ¶¶ 5-6, 8-10, 12, 14-15.)  In its February 23, 2006 Order, this Court clearly

8    outlined how and why Plaintiff's allegations fell short of stating a First Amendment claim, and granted

9    him leave to amend.  (*See* Feb. 23, 2006 Order at 6-9 (citing *Shaw v. Murphy*, 532 U.S. 223 (2001);

10   *Turner v. Safley*, 482 U.S. 78 (1987); *Lewis v. Casey*, 518 U.S. 343 (1996); and *Christopher v. Harbury*,

11   536 U.S. 403 (2002).)

12       In his Second Amended Complaint, Plaintiff does not allege, as he did before, that Defendants

13   violated the First Amendment by transferring him away from fellow inmates to whom he had a "right"

14   to provide legal assistance.  Instead, Plaintiff claims that on July 6, 2004, Sgt. Holmes "sought to place

15   [his] life in danger," by transferring him to another yard after Plaintiff refused to name, confirm or

16   otherwise identify who the  Mexican, white and black "shot callers" on the yard were.  (SAC at 2-3.)

17   Plaintiff claims Holmes "punished" him for refusing "to be a snitch" by removing Plaintiff from the

18   facility where he was "housed ... for over five years," where he "had numerous friends" and where he

19   "enjoyed assisting others with their legal problems."  (*Id*. at 3.)  Plaintiff claims Holmes' decision to

20   transfer him was "without just cause," and was precipitated by Plaintiff's refusal "to place his [own] life

21   in danger," because "inmates who are just 'said' to supply such information ... are eventually stabbed,

22   or sometimes killed."  (*Id.*)  Plaintiff concludes that Holmes  "attempt[ed] to place [him] in a dangerous

23   ... life threatening situation" in violation of the Eighth Amendment's cruel and unusual punishments

24   clause.  (*Id.* at 5.)

25       Plaintiff further claims that Defendant Loftin, in his individual and official capacity as a Third

26   Level Appeals Examiner, denied him due process when he reviewed Plaintiff's inmate appeal regarding

27   Holmes' action, as well as corroborating declarations of other three other inmates, and nevertheless

28   denied the grievance, finding Plaintiff's claim "completely unsubstantiated."  (*Id*. at 4, 5.)

1   Plaintiff requests $100,000 in general and punitive damages from each Defendant, as well as

2   "specific relief in order to make examples of [them], and to ensure that such behavior and acts alleged

3   ... will not occur again."  (*Id.* at 7.)

4                                            **III.**

5                          **DEFENDANTS' MOTION TO DISMISS**

6   **A.      Arguments**

7         Defendants argue that Plaintiff's SAC fails to state an Eighth Amendment claim against Sgt.

8   Holmes because a mere transfer between yards does not involve an "unnecessary and wanton infliction

9   of pain."  (Defs.' Mem. of P&As in Supp. of Mot. at 3-4.)   Defendants further contend Plaintiff fails

10  to state a claim against Appeals Examiner Loftin because there is no free-standing constitutional right

11  to an inmate grievance procedure, and that the Eleventh Amendment bars Plaintiff's claims to the extent

12  he seeks monetary damages for acts alleged to have been taken by them in their official capacities.  (*Id.*

13  at 4-6.)

14        In his Opposition, Plaintiff first accuses Defendants of "downplaying [his] claim to the level of

15  a 'transfer,' where in all reality the transfer was the fruit of unheeded threats and coercion to place [his]

16  life in danger."  (Pl.'s Opp'n at 5.)  Plaintiff further argues that his SAC alleges sufficient facts to show

17  that Sgt. Holmes acted with "deliberate indifference to Plaintiff's safety" by  "threat[ening] and

18  coerci[ng]" him to "place [his own] life in danger." (*Id.* at 6-7.)        Second, Plaintiff claims Defendants

19  have also mis-characterized his due process claim by repeatedly asserting that he has no "constitutional

20  right to a[] grievance system." (*Id.* at 8.)  Plaintiff specifically denies raising such a claim, and instead

21  asserts Defendant Loftin "depriv[ed him]] of a fair hearing."  (*Id.*)  Thus, Plaintiff claims his SAC

22  sufficiently alleges facts which show a violation of his due process right to a "fair proceeding" because

23  Loftin found his grievances against Sgt. Holmes "unsubstantiated" even though Plaintiff provided

24  "mountains of evidence" including "declarations by outside sources" in corroboration.  (*Id.* at 7-8.)

25        In their Reply, Defendants argue that to the extent Plaintiff premises his Eighth Amendment

26  claim against Sgt. Holmes on grounds that he placed Plaintiff's life in danger, he still fails to state a

27  claim because "theoretical danger" without physical injury "does not rise to the level of an Eighth

28  Amendment constitutional violation."  (*See* Defs.' Reply at 2.)  Defendant Loftin further claims

K:\COMMON\EVERYONE\_EFILE-PROSE\DMS\05-1546-MTD-SAC.wpd            4                              05cv1546

1   Plaintiff's SAC fails to allege Loftin was "personally involved" in the denial of Plaintiff's grievance.

2   (*Id*. at 3.)  Finally, Defendants claim that Plaintiff "received all the process he was due," and that he is

3   not entitled to due process protection "unless there was a loss of liberty," therefore, his due process

4   claim must fail.  (*Id*. at 4.)

5   **B.      FED.R.CIV.P. 12(b)(6) Standard of Review**

6          A Rule 12(b)(6) motion tests the legal sufficiency of a claim.  *Navarro v. Block*, 250 F.3d 729,

7   732 (9th Cir. 2001).  A claim may be dismissed only if "it appears beyond doubt that the plaintiff can

8   prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355

9   U.S. 41, 45-46 (1957); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).  In deciding

10  such a motion, all material factual allegations of the complaint are accepted as true, as well as all

11  reasonable inferences to be drawn from them.  *Cahill*, 80 F.3d at 338.  Dismissal is proper only where

12  there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal

13  theory. *Navarro*, 250 F.3d at 732 (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

14  1988)).  However,  the court need not accept all conclusory allegations as true; rather, it must "examine

15  whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden*

16  *v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); *Benson v. Arizona State Bd. of*

17  *Dental Examiners*, 673 F.2d 272, 275-76 (9th Cir. 1982) (court need not accept conclusory legal

18  assertions); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977) ("Conclusory allegations,

19  unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.");

20  *accord Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984) ("All well-pleaded facts, as distinguished

21  from conclusory allegations, must be taken as true.").  "The plaintiff must allege with at least some

22  degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones*

23  *v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).

24         "The focus of any Rule 12(b)(6) dismissal ... is the complaint." *Schneider v. California Dep't*

25  *of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  Thus, when resolving a motion to dismiss for

26  failure to state a claim, the court may not generally consider materials outside the pleadings. *Id.*  This

27  precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion

28  to dismiss brought pursuant to FED.R.CIV.P. 12(b)(6). *Id.* (citing *Harrell v. United States*, 13 F.3d 232,

1   236 (7th Cir. 1993); 2 Moore's FEDERAL PRACTICE, § 12.34[2] (Matthew Bender 3d ed.) ("The court

2   may not ... take into account additional facts asserted in a memorandum opposing the motion to dismiss,

3   because such memoranda do not constitute pleadings under Rule 7(a).")).   However, the court may

4   consider documents or exhibits "whose contents are alleged in a complaint and whose authenticity no

5   party questions." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Hal Roach Studios v. Richard*

6   *Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1990); *Stone v. Writer's Guild of Am. W. Inc.*, 101 F.3d

7   1312, 1313-14 (9th Cir. 1996).

8           **1.**      **Claim One**

9          As noted above, Plaintiff's SAC first claims that Sgt. Holmes's decision to transfer him violated

10  his Eighth Amendment right to be free from cruel and unusual punishment in two ways. First, Plaintiff

11  claims Sgt. Holmes transferred him in "retaliation" for refusing to snitch on his fellow inmates. (*See*

12  SAC at 5.)  Second, Plaintiff alleges Sgt. Holmes "punish[ed] him without just cause" in violation of

13  the Eighth Amendment by "attempting to place [him] in a 'dangerous' and 'life threatening situation.'"

14  (*Id.*)

15          **a.**      **Eighth Amendment Cruel and Unusual Punishments Clause**

16         Defendants are correct insofar as they argue Plaintiff has no constitutional right, under either the

17  Eighth or the Fourteenth Amendments,[2] to be housed in the prison facility or yard of his choosing. *Olim*

18  *v. Wakinekona*, 461 U.S. 238, 244-48 (1983) ("Even when ... the [prison] transfer involves long

19  distances and an ocean crossing [from Hawaii to California], the confinement remains within

20  constitutional limits."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  "It is perfectly obvious that every

21

22       [2]  In Claim One, Plaintiff's does not allege Sgt. Holmes transferred him in violation of the
Fourteenth Amendment.  Nor could he, as a non-consensual transfer is not per se violative of either
23  substantive due process or equal protection rights. *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir.
1991); *Stinson v. Nelson*, 525 F.2d 728, 730 (9th Cir. 1975).  As a matter of due process, a prisoner's
24  liberty interests are sufficiently extinguished by his conviction that the state may generally confine or
transfer him to any of its institutions, to prisons in another state, privately run-facilities or to federal
25  prisons, without offending the Constitution.  *See Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985)
(intrastate prison transfer does not implicate Due Process Clause); *White v. Lambert*, 370 F.3d 1002,
26  1012 (9th Cir. 2004) (finding that interstate transfer from state prison in Washington to privately-run
prison in Colorado did not violate substantive due process principles because "state prison facilities have
27  never 'been exclusively public.'") (quoting  *Richardson v. McKnight*, 521 U.S. 399, 405 (1997)
(discussing history of private penal institutions); *see also Montez v. McKinna*, 208 F.3d 862, 866-69
28  (10th Cir. 2000) (finding no due process violation in transferring prisoner to out-of-state private
prison)).

1  decision to remove a particular inmate from the general prison population for an indeterminate period

2  could not be characterized as cruel and unusual.  If new conditions of confinement are not materially

3  different from those affecting other prisoners, a transfer for the duration of a prisoner's sentence might

4  be completely unobjectionable and well within the authority of the prison administrator."  *Hutto v.*

5  *Finney*, 437 U.S. 678, 686 (1978).

6      This is because, "[a]fter incarceration, only the unnecessary and wanton infliction of pain ...

7  constitutes cruel and unusual punishment forbidden by the Eight Amendment."  *Whitely v. Albers*, 475

8  U.S. 312, 319 (1986).  To assert an Eighth Amendment claim for deprivation of humane conditions of

9  confinement, a prisoner must allege facts sufficient to fulfill two requirements:  one objective and one

10  subjective.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Under the objective requirement, the

11  prisoner must allege facts sufficient to show that the prison official's acts or omissions deprived him

12  of the "minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981);

13  *Farmer*, 511 U.S. at 834.  This objective component is satisfied so long as the institution "furnishes

14  sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety."

15  *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Farmer*, 511 U.S. at 832; *Wright v. Rushen*, 642

16  F.2d 1129, 1132-33 (9th Cir. 1981).

17      Under the subjective requirement, the prisoner must allege facts that show that the defendant

18  acted with "deliberate indifference."   *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).  "Deliberate

19  indifference" exists when a prison official "knows of and disregards an excessive risk to inmate health

20  and safety; the official must be both aware of facts from which the inference could be drawn that a

21  substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837;

22  *Wilson*, 501 U.S. at 302-303.

23      Here, Plaintiff has alleged absolutely no facts related to his transfer which satisfy either the

24  objective or subjective component of an Eighth Amendment claim.  First, Plaintiff does not claim  to

25  have been deprived of any of life's "necessities" simply by being transferred to another yard.  *Rhodes*,

26  452 U.S. at 357.  Specifically, he does not allege to have been denied "food, clothing, shelter, [proper]

27  sanitation, [or adequate] medical care" as a result of his transfer from B-yard, nor does he claim to have

28  had his personal health or safety in any way compromised as a result.  *Hoptowit*, 682 F.2d at 1246.

1  / / /

2          Second, Plaintiff alleges no facts to show that Sgt. Holmes transferred him to another yard with

3  "deliberate indifference" to a known or obvious excessive risk to his health or safety. *Farmer*, 511 U.S.

4  at 837.  In fact, Plaintiff's first Exhibit, attached in support of his SAC is his CDC 602 Inmate/Parolee

5  Appeal, Log No. 04-1106, and signed by him on July 7, 2004, states:  "On June 6, 2004, I reported to

6  Sgt. Holmes ... that Inmate Dove P-32294, my assigned cellmate of 'two weeks,' had made a threat upon

7  my life."  (*See* SAC, Pl.'s Appendix/Attachment at 1; *Branch*, 14 F.3d at 454 (court ruling pursuant to

8  Rule 12(b)(6), may consider documents or exhibits "whose contents are alleged in a complaint and

9  whose authenticity no party questions.")  Thus, even though Plaintiff and his new cellmate Dove

10  apparently resolved their differences after Holmes "remove[d] [Plaintiff] ... not only out of the cell (B5

11  121), but completely off 'B' yard," (*see* Pl.'s Appendix/Attachment at 1), Holmes' decision to transfer

12  Plaintiff *away* from a now known risk to his safety, does not show any conscious disregard to Plaintiff's

13  safety; rather, it undermines Plaintiff's claim entirely, for "[p]rison officials have a *duty*  [under the

14  Eighth Amendment] ... to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511

15  U.S. at 833 (emphasis added).  The mere fact that both Plaintiff and Dove "sign[ed] chronos[] stating

16  [they] [we]re not enemies," and that they believed they "c[ould] remain on the same yard without

17  incident," (*see* Pl.'s Appendix/Attachment at 1, 6 "CDC 128-B" dated 7/5/04) does not, without more,

18  show Holmes was deliberately indifferent to Plaintiff's safety in deciding to transfer him anyway. *See*

19  *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003) ("Although there are some minimal legal limitations,

20  [...] the assignment of inmates within the California prisons is essentially a matter of administrative

21  discretion."); *id.* at 1290 ("[C]ourts must remember that the duty to protect inmates' constitutional rights

22  does not confer the power to manage prisons or the capacity to second-guess prison administrators, for

23  which [they] are ill-equipped.").

24          For these reasons, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's Eighth

25  Amendment claims for failing to state a claim pursuant to FED.R.CIV.P. 12(b)(6).

26          **b.      First Amendment Retaliation**

27          Although prisoners do not have a constitutional right to particular custody levels or facility

28  placements, the Ninth Circuit has long held that transfers and demotions may violate a prisoner's First

1   Amendment rights if they are motivated by a desire to curtail protected speech activities.  *Pratt v.*

2   *Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).  Thus, the Court finds that a liberal construction of the facts

3   underlying Plaintiff's claim against Sgt. Holmes requires consideration of not only whether his transfer

4   violated the Eighth Amendment, but also whether it was retaliatory.  *See Austin v. Terhune*, 367 F.3d

5   1167, 1171 (9th Cir. 2004); *Pratt* 65 F.3d at 806.

6        A plaintiff suing prison officials pursuant to § 1983 for retaliation must allege sufficient facts

7   to show:  (1) he was retaliated against for exercising his constitutional rights, (2) the alleged retaliatory

8   action "does not advance legitimate penological goals, such as preserving institutional order and

9   discipline,"  *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam), and (3) the

10   defendants' actions harmed him.  *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Hines v.*

11   *Gomez*, 108 F.3d 265, 269 (9th Cir. 1997); *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

12        Courts must "'afford appropriate deference and flexibility' to prison officials in the evaluation

13   of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt,* 65 F.3d at 807

14   (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).  Thus, the burden is on the prisoner to allege

15   facts which demonstrate "that there were no legitimate correctional purposes motivating the actions he

16   complains of."  *Id.* at 808; *Bruce*, 351 F.3d at 1289.

17          **i.**     **Protected Conduct– Exercise of Constitutional Right**

18        Here, Plaintiff claims Sgt. Homes transferred him because he refused to either identify or

19   confirm the identity of inmate 'shot-callers' on the yard at Sgt. Holmes's request. (SAC at 2.)  Plaintiff

20   argues his claim is similar to the one raised in *Austin*, where the Ninth Circuit found a prisoner's

21   allegations of having been "punished for filing a grievance" sufficient to state a claim for retaliation

22   pursuant to FED.R.CIV.P. 8.  (*Id.*, citing *Austin*, 367 F.3d at 1171.)  Defendants claim Plaintiff's reliance

23   on *Austin*, is "inapposite" because he "was not punished for filing a grievance, his grievance was merely

24   denied," and they "do not claim Plaintiff's SAC fail[s] to meet the plain pleading standards of Rule

25   8(a)." (Defs.' Reply at 3.)

26        An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance

27   is sufficient to support a claim under section 1983.  *Bruce*, 351 F.3d at 1288.  Defendants are correct

28   that Plaintiff does not allege his transfer (the "adverse action") was precipitated or "caused" by his use

1    of the prison grievance system, which is "protected conduct." *Pratt*, 65 F.3d at 807.  In fact, Plaintiff's

2    Exhibits show that his CDC 602 Inmate/Parolee Appeal regarding the transfer was filed on July 7, 2004,

3    one day *after* Sgt. Holmes had him transferred.  (SAC, Pl.'s "Appendix / Attachment" at 1.)  Nor does

4    Plaintiff claim Holmes transferred him because he exercised his right to access to the court, *see e.g.,*

5    *Lewis v. Casey*, 518 U.S. 343, 355 (1996), or the First Amendment right to provide legal assistance to

6    other inmates, as he did in his original pleading.  *See Shaw v. Murphy*, 532 U.S. 223, 230 (2001)

7    (declining to "cloak the provision of legal assistance [to other inmates] with any First Amendment

8    protection above and beyond the protection normally accorded [to] prisoners' speech.").

9         Instead, Plaintiff now claims only that Sgt. Holmes transferred him because he refused to snitch

10   on his fellow inmates.  (SAC at 2-3.)  In *Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989),

11   the Ninth Circuit found an inmate's allegation that prison officials conspired to label prisoner a "snitch"

12   in retaliation for petitioning for redress of grievances stated a cognizable claim for violation of right of

13   access to the courts.  *Id.* at 1138.  Here, however, Plaintiff does not claim Holmes labeled, or even

14   threatened to label him a "snitch" in the presence of other inmates–instead, he claims he merely feared

15   such a fate and therefore, refused to participate in Holmes' investigation.  The question then becomes

16   whether Plaintiff has a constitutional right *not* to "snitch," i.e., whether his refusal to speak is "protected

17   conduct" which may form the basis of a retaliation claim. *See Barnett*, 31 F.3d at 815; *Pratt*, 65 F.3d

18   at 807.

19        The Ninth Circuit has never considered this specific question, although two district courts in

20   other Circuits have.  In *David v. Hill*, 401 F.Supp.2d 749 (S.D. Texas 2005), a case strikingly similar

21   to the one before this Court, Michael David, a Texas State prisoner, claimed prison officials filed false

22   disciplinary charges against him, rifled through his mail, confiscated his property, and held him in

23   solitary confinement "because he failed to work as a snitch" and refused to "give up" corrupt prison unit

24   employees in an ongoing internal investigation of illicit drug and tobacco trafficking activities within

25   the prison.  *Id.* at 756.  David filed a civil rights complaint alleging harassment and retaliation, as well

26   as deliberate indifference to his health and safety in violation of the Eighth Amendment.  *Id.* at 753.  The

27   Defendants filed a Motion for Judgment on the Pleadings, arguing David "failed to state a claim of

28   retaliation because he failed to identify what constitutional right he was exercising that motivated

1  defendants to retaliate against him." *Id.* at 755-56. Specifically, the defendant prison official argued that

2  "an inmate has no constitutional right to avoid being asked questions and pressured to participate in a

3  prison investigation." Id. at 756. The Southern District of Texas, however, disagreed. *Id.*

4         The court canvassed published decisions in the Fourth, Fifth, Sixth, Ninth, Tenth and Eleventh

5  Circuits which have "long recognized that being labeled a 'snitch' in the prison environment can indeed

6  pose a threat to an inmate's health and safety in violation of the Eighth Amendment," *id.* at 756, and

7  concluded that David's retaliation claim, based on his refusal to snitch, "was a logical extension of

8  [Eighth Amendment] failure to protect case law; that he not be forced to participate in activities that

9  place his life in danger." *Id.* at 757 (citing *United States v. Henderson*, 565 F.2d 900, 905 (5th Cir.

10  1978); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Valandingham*, 866 F.2d at 1139; *Miller*

11  *v. Leathers*, 913 F.2d 1085, 1088 n.* (4th Cir. 1990); *Northington v. Marin*, 102 F.3d 1564, 1567-68

12  (10th Cir. 1996); *Comstock v. McCrary*, 273 F.3d 693, 699 n.2 (6th Cir. 2001).) Thus, even though

13  David, like Plaintiff in this case, did not allege to have been retaliated against for filing inmate

14  grievances, and did not claim that Defendants actually *did* label him a snitch in the presence of other

15  inmates, but rather, claimed his refusal to snitch was the motivating factor behind prison officials'

16  retaliatory actions, the Court "assume[d] without deciding that [David] ha[d] a constitutional right not

17  to participate in a prison investigation" that could place his life in danger, and therefore, had alleged

18  facts sufficient to satisfy the first prong of a retaliation claim, *i.e.*, that he was punished because he

19  engaged in "protected conduct." *David*, 401 F.Supp.2d at 757; *see also Rhodes,* 408 F.3d at 567-68.

20         The only other court to have considered this question in the context of a retaliation cause of

21  action has similarly analogized to the Supreme Court's decision in *Farmer*, 511 U.S. at 833 (holding

22  "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners" under

23  the Eighth Amendment) (citations omitted), and has assumed the same. *See Jackson v. Johnson*, 15

24  F.Supp.2d 341, 364 (S.D.N.Y. 1998) ("The Court assumes, without deciding, that Jackson satisfies the

25  first prong of the [retaliation] test--that he has [a] constitutional right[] not to snitch....") (comparing

26  *Watson v. McGinnis*, 964 F.Supp. 127, 131-32 (S.D.N.Y. 1997) (holding prison guard's labeling of

27  inmate as a snitch sufficient to state Eighth Amendment failure to protect claim)).

28

1    Here, Plaintiff's claims are almost identical to those raised in *David*–he alleges Sgt. Holmes

2  "effected [his] removal" from B-yard where Plaintiff "was housed for over five years" and where he

3  "enjoyed assisting other[ inmates] with their legal problems," because he refused "to place his life in

4  danger" by either "tell[ing] [Holmes] who the Mexican, white[] and black shot callers [we]re," or

5  refusing to confirm Holmes' suspicions as to the shot callers' identities.  (SAC at 2-3.)  Thus, this Court

6  will assume, like the Court in *David*, that Plaintiff's refusal is "protected conduct" sufficient to support

7  a retaliation claim.  *David*, 401 F.Supp.2d at 757; *Barnett*, 31 F.3d at 815; *Pratt*, 65 F.3d at 807.

8                    **ii.        Advancement of Legitimate Penological Goal**

9    The Court must next consider, however, whether Plaintiff has alleged facts sufficient to satisfy

10  the second prong of a retaliation claim. *i.e.*, "that there were no legitimate correctional purposes

11  motivating the actions he complains of."  *Pratt,* 65 F.3d at 808; *Bruce*, 351 F.3d at 1289.  In the context

12  of this case, then, Plaintiff must plead facts to show that Sgt. Holmes' transferred him *because* he

13  refused to snitch, and for no other "legitimate correctional purpose[]."  *Id.*

14    In his original Complaint, Plaintiff admitted that prior to transfer, he had "reported a threat on

15  his life" by his new cellmate, Dove, who had recently been assigned to Plaintiff's cell on B-yard.  *See*

16  Compl. ¶ 7.  As discussed above in the context of Plaintiff's Eighth Amendment claim, it is obvious that

17  Sgt. Holmes had a "legitimate correctional purpose," and in fact, a constitutional *duty*, to protect

18  Plaintiff, and any inmate within his care, from a known or obvious and serious threat to his safety.

19  *Farmer*, 511 U.S. at 833 ("Prison officials have a duty [under the Eighth Amendment] ... to protect

20  prisoners from violence at the hands of other prisoners.") (quotations and citations deleted).  And while

21  an amended pleading supersedes the original and the text of Plaintiff's Second Amended Complaint

22  includes no mention of Plaintiff's conversation with Sgt. Holmes about Dove's threat, the "Appendi[ces]

23  / Attachment[s]" to his Second Amended Complaint do.  *See  Hal Roach Studios, Inc. v. Richard Feiner*

24  *& Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original.");

25  *see also Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ("When a

26  plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining

27  whether dismissal [is] proper" under FED.R.CIV.P. 12(b)(6).)

28

1    For example, Plaintiff's CDC Inmate/Parolee Form 602, Log No. 04-1106, filed on July 7, 2004,

2  and attached as an Exhibit to Plaintiff's Second Amended Complaint, defeats any retaliation claim he

3  may wish to assert against Sgt. Holmes, because it shows that Holmes *had* a neutral and legitimate

4  reason to transfer him, regardless of whether Plaintiff agreed to snitch. *See Pratt,* 65 F.3d at 808; *Bruce*,

5  351 F.3d at 1289.  Specifically, Plaintiff's CDC 602 states, "On June 6, 2004, I reported to Sargent [sic]

6  Holmes ... that inmate Dove P-32294, my assigned cellmate of 'two weeks,' had made a threat upon my

7  life.  Sargent [sic] Holmes subsequently made the decision to remove me the following day, not only

8  out of cell (B5 121), but completely off 'B' yard."  *See* SAC Append. / Attach. at 1.

9    In addition, another of Plaintiff's attachments, his California Board of Control Government

10  Claim, submitted to the Victim Compensation and Government Claims Board on February 1, 2005,

11  alleges both that Holmes asked Plaintiff to "snitch" on the yard's shot-callers, *and* that Plaintiff had

12  reported Dove's threats to Sgt. Holmes :

13    > Threats were made upon my life.  I reported these threats to Sargent [sic]
    > Holmes and Leuitenant [sic] Napolatano.  The decision was made to
14    > move me off the yard in which I was assisting inmates with legal issues
    > for a period of over 5 years.  This decision was supported by Leuitenant
15    > [sic] Napolatano, Captain Favilia and CCI M. Brown, who stood there
    > and allowed this violation of constitutional law.  The threats were made
16    > by inmate Dove P-32294, who had just come to the Facility less than one
    > month of the incident, where my moval [sic] from "B" Facility [e]ffected
17    > approximately 9 inmates who[] I was presently assisting with legal
    > issues.  I was also interrogated by Sargent [sic] Holmes to snitch out who
18    > the Mexican and White shot callers are, for which if I was stupid enough
    > to tell him, he sure would have told them that I told him, just like he told
19    > me that Zimmerman, Jones and Howard, inmates on B Yard, are his
    > agents.
20
*See* SAC, Append. / Attach. at 24; *Parks School of Business*, 51 F.3d at 1484;  *see also MGIC Indem.*
21
*Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (pursuant to Rule 12(b)(6), court may take judicial
22
notice of  public records); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (court may take judicial
23
notice under Rule 12(b)(6) of "records and reports of administrative bodies").
24
25    Thus, the Court finds that Plaintiff has failed to allege facts sufficient to show that Sgt. Holmes'

26  decision to transfer him off B-Yard was retaliatory because he has failed to show the transfer lacked or

  failed to advance "legitimate penological goals such as preserving institutional order and discipline."
27
*Barnett*, 31 F.3d at 815-16;  *Pratt*, 65 F.3d at 808; *Bruce*, 351 F.3d at 1289.  The Court agrees with
28
Defendants that had Holmes failed to transfer Plaintiff after knowing inmate Dove had made a "threat

1 | upon [his] life," and if Plaintiff was harmed as a result, Holmes would have been deliberately indifferent

2 | to a serious risk to Plaintiff's safety in violation of the Eighth Amendment. *See e.g., Estate of Ford v.*

3 | *Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002) (concluding, in an Eighth Amendment failure to

4 | protect case, if correctional officers knew one inmate "was acting out dangerously with cellmates" or

5 | that "he was a threat to [plaintiff] but housed [plaintiff] with him anyway, this would violate the Eighth

6 | Amendment.... [T]here is no question that this conduct would touch all the bases established in

7 | *Farmer*.").

8 | For these reasons, Defendants' Motion to Dismiss Plaintiff's retaliation claims against Sgt.

9 | Holmes is GRANTED for failure to state a claim upon which relief can be granted pursuant to

10 | FED.R.CIV.P. 12(b)(6).

11 | **2.      Claim Two**

12 | Defendants' further seeks dismissal of Plaintiff's due process claim against Defendant Loftin,

13 | an inmate appeals examiner, for failing to "fairly" process his inmate appeals. *See* Defs.' Mot. at 4-5;

14 | SAC at 4, 5.

15 | The procedural guarantees of the Fourteenth Amendment's Due Process Clause apply only when

16 | a constitutionally protected liberty or property interest is at stake. *Ingraham v. Wright*, 430 U.S. 651,

17 | 672 (1977); *Neal v. Shimoda*, 131 F.3d 818, 827 (9th Cir. 1997).   While Plaintiff claims that Loftin

18 | deprived him of his due process when he found Plaintiff's claims against Sgt. Holmes "unsubstantiated,"

19 | the Ninth Circuit has held that prisoners have no protected property interest in an inmate grievance

20 | procedure. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (finding that the due process claim

21 | of the Fourteenth Amendment creates "no legitimate claim of entitlement to a [prison] grievance

22 | procedure").

23 | The Court further finds that Plaintiff has failed to plead facts sufficient to show that Defendant

24 | Loftin deprived him of a protected liberty interest by failing to favorably respond to his grievances. *See*

25 | *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (rejecting prisoner's claimed loss of liberty

26 | interest in the unsatisfactory processing of his inmate appeals "because inmates lack a separate

27 | constitutional entitlement to a specific prison grievance procedure.")  Liberty interests can arise from

28 | state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).  However, a prisoner may only challenge a state

1  action which does not restrain a [constitutionally] protected liberty interest if that state action

2  "nonetheless imposes some 'atypical and significant hardship on the inmate in relation to the ordinary

3  incidents of prison life.'"

4  / / /

5  *Ramirez*, 334 F.3d at 860 (quoting *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)); *see also Neal*, 131

6  F.3d at 827-28; *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (per curiam).

7        Here, Plaintiff pleads no facts to suggest how Loftin's allegedly inadequate review and

8  consideration of his inmate CDC 602 appeal amounted to a restraint on his freedom not contemplated

9  by his original sentence or resulted in an "atypical" and "significant hardship." *Sandin*, 515 U.S. at 483-

10 484.  Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's grievance procedure

11 due process claims against Defendant Loftin pursuant to FED.R.CIV.P. 12(b)(6).

12                                      **IV.**

13                            **CONCLUSION AND ORDER**

14       For all the foregoing reasons, IT IS HEREBY ORDERED that:

15       (1)   Defendants' Holmes and Loftin's Motion to Dismiss Plaintiff's Second Amended

16 Complaint for failing to state a claim upon which relief can be granted pursuant to FED.R.CIV.P.

17 12(b)(6) [Doc. No. 17] is GRANTED; and

18       (2)   No further leave to amend will be granted. *See Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d

19 336, 339 (9th Cir. 1996) (where amendment of litigant's complaint would be futile, denial of leave to

20 amend is appropriate).

21       The Clerk shall close the file.

22       **IT IS SO ORDERED.**

23

24 DATED:  November 6, 2006

25

26                                      HON. DANA M. SABRAW
                                        United States District Judge
27

28